## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ALEXIUS HIGHTOWER, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CAPSTONE ISG, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff ALEXIUS HIGHTOWER, and hereby files this her

Complaint for Damages, showing this Honorable Court as follows:

## NATURE OF COMPLAINT

### 1.

Plaintiff brings this action for damages caused by Defendant Capstone ISG,

Inc.'s (hereinafter "Defendant" or "Capstone") unlawful discriminatory

employment practices involving Plaintiff's employment and termination.  The

discrimination committed by Defendant violated the Americans with Disabilities

Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA") and Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), and

impaired a contractual relationship under which Plaintiff had rights in violation of 42 U.S.C. §1981 ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 12101 *et seq*., and 42 U.S.C. § 12117. This lawsuit is brought pursuant to the 42 U.S.C. § 1981, and 1981a and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991. Equitable and other relief is sought under 42 U.S.C. 2000e-5(g).

3.

Defendant is located and doing business within this judicial district and division.  This action is brought within the Northern District of Georgia, wherein all or a substantial majority of the unlawful employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

4.

Plaintiff Alexius Hightower is a resident of the state of Georgia and is subject to the jurisdiction of this Court.

5.

Plaintiff was employed by Defendant at all times material to the claims asserted herein and was an "employee" of Defendant as defined by the ADA at 42 U.S.C. § 12111(4) and by Title VII.

6.

Plaintiff is African American and is therefore a member of a protected class under Title VII.

7.

Plaintiff, at all times relevant hereto, was an individual with a disability as the term is defined by 42 U.S.C. § 12102(1).

8.

Plaintiff is a person with a disability inasmuch as she has an impairment causing substantial limitations in one or more major life activities, she has a record of a disability, and Defendant regarded her as having a disability.

9.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for each working day in each of 20 more calendar weeks in the preceding calendar year, and therefore satisfies the requisite requirements of the ADA.  42 U.S.C. § 12111(5).

10.

During all times material to this lawsuit, Defendant was an "employer" as defined in Title VII.

11.

Defendant is subject to the anti-discrimination provisions of Section 1981, Title VII, and the ADA.

12.

Defendant is a domestic corporation doing business in Atlanta, Georgia, and at all times material hereto has conducted business within this District. This Defendant may be served through its registered agent for service of process: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092, Gwinnett County.

## ADMINISTRATIVE PROCEDURES

13.

Plaintiff satisfied all administrative prerequisites to perfect her claims by timely filing a Charge of Discrimination, (attached hereto as Exhibit "A"), with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 410-2020-00176, on or about December 5, 2019.

14.

The EEOC issued Plaintiff a "Notice of Right to Sue," (attached hereto as Exhibit "B"), on January 26, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

15.

On March 29, 2021, the EEOC issued a Reconsideration Notice and Revocation of Notice of Right to Sue, (attached hereto as Exhibit "C"), to Plaintiff. In this Notice, the EEOC informed Plaintiff it revoked and rescinded the previously issued Notice of Right to Sue, dated January 26, 2021, due to an administrative error.

16.

The EEOC issued plaintiff a second "Notice of Right to Sue," (attached hereto as Exhibit "D"), on August 19, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

17.

Plaintiff initiated this action within ninety (90) days of receipt of the second "Notice of Right to Sue."

## **FACTUAL ALLEGATIONS**

18.

Defendant hired Plaintiff as a Claims Examiner on or around October 8, 2018.

5

19.

At all times relevant to this Complaint, Jason Soulsby (white), was Plaintiff's supervisor.

20.

Plaintiff worked in Defendant's Marietta, GA office ("Marietta office"). During Plaintiff's employment, the following employees were based this office: Kristy Clark, Administrative Assistant; Ben Delahoyde, Director of Sales and Marketing; Corrine Foley, Marketing Support Specialist, Kathryn Priestash, Marketing Specialist; Adam Benefield, Claims Examiner; Brandon Benbinster, Field Adjuster; Jason Soulsby, Claims Manager, Plaintiff Alexius Hightower, Claims Examiner.

21.

Plaintiff was the only African American employee based in the Marietta office.  Every other individual identified in Paragraph 21 is white.

22.

In accordance with Defendant's personnel manual, Plaintiff was hired with a 6-month probation period, which Defendant defines as a time when new hires' managers will work closely with them to help them understand the needs and processes of their job.

23.

During her first three months working for Defendant, Plaintiff received very little training.

24.

Rather than properly training Plaintiff, her supervisor, Jason Soulsby, assigned her menial, simple tasks such as making phone calls and checking in with the parties on Soulsby's files.

25.

Instead of giving Plaintiff the attention and training Soulsby gave to Plaintiff's white coworkers, Soulsby referred her to other employees while he closed his office door to her and slept.

26.

Soulsby rarely visited the office in December 2018 and January 2019, leaving Plaintiff to fend for herself and rely on Kristy Clark, the Administrative Assistant, to complete tasks.  Clark has no claims experience but was Plaintiff's only resource due to Soulsby's neglect.

27.

Prior to her start date, Soulsby told Plaintiff that she might be able to train in North Carolina, where her coworker, Brandon Benbinster (white), had been trained. Plaintiff never received the training that was afforded to Benbinster.

28.

Unfortunately, on May 12, 2019, Plaintiff was involved in a motor vehicle accident, where an at-fault driver slammed into Plaintiff's car and caused severe injury to her left rotator cuff. Plaintiff immediately sought treatment and was taken out of work by her treating physician for seven (7) days.

29.

On May 13, 2019, the day following the crash, Plaintiff informed Soulsby of her injuries and that she had been advised not to return to work for a week.

30.

Around the date of Plaintiff's crash, and without Plaintiff's knowledge, Soulsby reassigned several files from Adam Benefield (white) to Plaintiff because Benefield was behind on his work. Not only did this increase the volume of Plaintiff's cases, but these cases were significantly more complex and beyond her skillset due to the lack of training by Soulsby.

31.

Benefield had been behind on his files since Plaintiff's employment with Defendant began.

32.

During the entirety of her employment with Defendant, Benefield worked from home full time.

33.

On May 29, 2019, Plaintiff was referred to physical therapy three (3) times a week for eight (8) weeks.  Plaintiff informed Soulsby that this would cause her to be out of the office.  Plaintiff was absent from work during the appointments and sometimes after the appointments because the therapy caused significant pain, making it impossible for Plaintiff to type for extended periods of time.

34.

Because of the pain and the appointments, Plaintiff requested to work from home.  Plaintiff was not allowed to work from home full time.

35.

Benbinster (white) moved to Florida and was still based out of the Marietta office.  He was allowed to work completely from home.

36.

Soulsby reported Plaintiff to Capstone HR for trying to work from home.  HR informed Plaintiff that she was prohibited from working remotely.

37.

Soulsby required Plaintiff, the only black employee, to provide proof that she attended physical therapy appointments.  Soulsby did not require Plaintiff's white colleagues to do the same, even though they were in and out of the office.

38.

During the third quarter of 2019, Plaintiff was diagnosed with post-traumatic stress disorder.  Plaintiff informed Capstone HR of her diagnosis.  Plaintiff asked an HR representative to assist with temporarily reducing her workload to accommodate this disability, and the representative denied this request.

39.

The HR representative told Plaintiff Capstone did not have FMLA, but Plaintiff could go out on short term disability.

40.

On September 29, 2019, Plaintiff's therapist recommended that she work from home until she controlled her anxiety and sent a letter to Defendant indicating the same.  Defendant denied this request.

41.

Soulsby harassed Plaintiff any time she was not in the office, even though he, nor Benefield or Benbinster, were in the office full time.  Soulsby was suspicious of Plaintiff when she worked from home because she is black.

42.

Soulsby demeaned Plaintiff in front of her white coworkers, telling her she did not pull her weight or earn her salary.  Soulsby told Plaintiff that other employees had been in car accidents and could work without assistance.

43.

Soulsby repeatedly compared Plaintiff to another black employee, Kevin Richardson, who had been terminated by Defendant and described by Soulsby as lazy and unable to perform.

44.

Soulsby asked employees at the Marietta office to take note of Plaintiff's actions and report her behavior to him.

45.

Field adjusters repeatedly prioritized white employees in the Marietta office over Plaintiff.

46.

Plaintiff complained to Soulsby about the white field adjusters' behavior on numerous occasions.

47.

In September 2019, Plaintiff's therapist recommended she get an emotional support animal.  Plaintiff adopted a dog and brought the dog into the Marietta office for support.

48.

Delahoyde, a manager in the Marietta office, never mentioned that Plaintiff could not bring in Plaintiff's support dog, who accompanied Plaintiff to the office for over a week.  During this time, Soulsby was on leave from work for several weeks.

49.

When Soulsby returned to work, he reported Plaintiff to HR for having her support dog.   HR told Plaintiff she could not bring her support animal into work.

50.

Two white employees in the Marietta office, Ben Delahoyde and Jason Soulsby, brought their dogs into the office without consequence.

51.

Because she was being targeted and treated differently than her white coworkers, Plaintiff became extremely emotionally distraught and requested to work from home as an accommodation.  HR denied this accommodation.

52.

Plaintiff's primary care physician and therapist mailed new work from home accommodation requests on October 16, 2019, and October 23, 2019, respectively. Capstone denied the requested accommodation of working from home as needed.

53.

Plaintiff went out on short-term disability from October 5, 2019, through December 16, 2019.

54.

On October 24, 2019, Plaintiff complained to Capstone HR, stating she had been subject to a hostile and toxic work environment.  Capstone HR ignored the allegation.

55.

On December 16, 2019, Defendant sent Plaintiff a letter advising her she was terminated for violating Capstone's Leave of Absence policy, effective December 31, 2019.

56.

Plaintiff was paid less than similarly performing white males.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

57.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

58.

During Plaintiff's employment with Defendant, Defendant subjected her to discrimination on the basis of her race including, but not limited to: (a) imposing and enforcing workplace policies, practices, and procedures against her but not white employees; (b) failing and refusing to properly support and train Plaintiff but adequately supporting white employees; (c) subjecting Plaintiff to unfair disciplinary action as compared to white employees; (d) favoring and believing white employees over Plaintiff because of her race; (e) ignoring and actively denying Plaintiff's specific complaints about discrimination and a hostile work environment; (f) reassigning work from underperforming white employees to Plaintiff in an effort to make her fail.

59.

But-for her race, Plaintiff would not have suffered the loss of her legally protected rights.

60.

The above-pled discriminatory conduct toward Plaintiff constitutes race discrimination by Defendant against Plaintiff in violation of 42 U.S.C. § 1981.

61.

As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered lost compensation and other benefits of employment, severe emotional distress and injury, loss of income, humiliation, inconvenience, and other indignities.

62.

Defendant undertook their conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights or, alternatively, undertook their conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against them.

63.

Plaintiff is entitled to damages against Defendant, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

64.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

65.

At all relevant times, Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e(f).

66.

At all relevant times, Defendant was Plaintiff's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

67.

Plaintiff is African American and is therefore a member of a protected class under Title VII.

68.

Plaintiff met the qualifications for her position as a claims examiner and performed well in that position.

69.

Plaintiff's race was a motivating factor in the above-pled discriminatory actions.

70.

The race discrimination to which Plaintiff was subjected by Defendant was in violation of Title VII, thus entitling her to all appropriate relief provided under the statute.

71.

Defendant's actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff, and were in derogation of Plaintiff's federally protected rights.

## COUNT III
## ADA – DISABILITY DISCRIMINATION

72.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

73.

Plaintiff is a disabled person as defined by the ADA in that (a) she has a physical impairment and (b) she has a record of such impairment.

74.

Plaintiff has a physical impairment which substantially limits one or more major life activities.

75.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA.

76.

At all times relevant to this action, Plaintiff was capable of performing the essential functions of her position with Defendant.

77.

Plaintiff requested a reasonable accommodation that would have allowed her to continue to perform the essential functions of her job.

78.

Defendant refused to grant the accommodation Plaintiff requested.

79.

Defendant received notice of Plaintiff's disability.

80.

Defendant terminated Plaintiff's employment because of her disability.

81.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA.

82.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

83.

Defendant treated other employees without a disability differently than it treated Plaintiff.

84.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her disability. This is a violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, *et seq*.

85.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

86.

Defendant's conduct complained of herein deprived Plaintiff of an equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

87.

As a direct and proximate result of Defendant's violations of the ADA, Plaintiff suffered damages to her psychological and physical well-being.

88.

As a result of this discrimination, Plaintiff was injured and damaged; she was forced to seek other employment; her career was significantly and adversely impacted; she was forced to forego compensation and benefits; and to endure mental anguish, emotional distress, humiliation, and shame.

89.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADA.

**WHEREFORE**, Plaintiff requests the following relief:

a) General damages for mental and emotional suffering caused by the misconduct of Defendant;

b) Punitive damages based on the Defendant's willful, malicious, intentional, and deliberate acts;

c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

d) Reasonable attorneys' fees and expenses of litigation;

e) Trial by jury as to all issues;

f) Prejudgment interest at the rate allowed by law;

g) Declaratory relief to the effect that Defendant violated Plaintiff's statutory rights;

h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

i) All other relief to which she may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff herewith demands trial by jury as to all issues to which a right to trial by jury is afforded.

Respectfully submitted, this 17th day of November, 2021.

HOFFER & WEBB, LLC

_____
ROBYN OLIVER WEBB
Georgia Bar No. 552505
MARY PAIGE GRAY
Georgia Bar No. 991260
*Attorneys for Plaintiff*

3190 Northeast Expressway, Suite 430
Chamblee, Georgia 30341
404-260-6330 Office
404-260-6192 Direct / Fax
rwebb@hofferwebb.com

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1C</u>

Pursuant to the Local Rules of this Court, the above-signed counsel certify that this pleading complies with all formatting requirements of the Local Rules and further certifies that this pleading is printed in Times New Roman, 14-point type.